# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rosemary Laroe, Individually and    :
as Administratrix of the Estate of    :
John F. Laroe,    :
                  Appellant    :
    :
           v.    :   No. 906 C.D. 2021
    :   ARGUED:  June 23, 2022
Kathleen Sandow and Endless    :
Mountains Transportation Authority    :
d/b/a Best Transit    :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## <u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**              **FILED:  July 18, 2022**

Plaintiff/Appellant Rosemary Laroe, in her individual capacity and as administratrix of the estate of her husband, John F. Laroe, appeals from the order of the Court of Common Pleas for the 44th Judicial District, Sullivan County Branch, Civil Division, granting summary judgment in favor of Defendants/Appellees Kathleen Sandow and her employer, the Endless Mountains Transportation Authority d/b/a Best Transit.  We affirm.

On February 13, 2019, Ms. Sandow pulled her bus in front of the Laroe residence, where it was stopped at all relevant times.  Prior to the fall at issue, Mr.

Laroe, who was 69 years of age, was disabled with several infirmities.[1]  Mr. Laroe used a walker to walk to a wheelchair, then rode the wheelchair three quarters of the way down his driveway and stopped because his path was impeded by unshoveled snow.  Ms. Sandow and Mrs. Laroe shoveled the remaining snow while Mr. Laroe stayed in his wheelchair.  Ms. Sandow[2] then assisted Mr. Laroe out of his wheelchair and went to place the wheelchair on the bus, which was ten to fifteen feet away.  While Ms. Sandow loaded the wheelchair onto the bus, Mr. Laroe fell.  No one saw the fall occur.

Thereafter, Mr. Laroe spent a few days in the hospital where he underwent surgery on his right hip and femur prior to being transferred to skilled nursing care for four to five weeks.  After being discharged and returning home, Mr. Laroe fell again.  Sometime in April 2019, Mr. Laroe entered hospice, dying on May 9, 2019, with his cause of death listed as heart disease.

In January 2020, Mrs. Laroe filed suit against Appellees.  Appellant's suit alleged that Ms. Sandow was negligent in not pulling her bus into the driveway at the Laroe residence, which caused Mr. Laroe to fall resulting in his injury and ultimate death.  After discovery, Appellees filed their motion for summary judgment.  The trial court entered an order granting summary judgment and a supporting

---

[1] Mr. Laroe suffered a work-related back injury in 1991, which left him unable to work outside the home; he later developed diabetic neuropathy and vascular dementia.  Between 2013 and the date of the fall at issue, he had fallen a number of times and been hospitalized three to four times.  A previous fall caused him to fracture his foot and ribs, requiring him to remain in skilled nursing care for six to eight weeks.  He suffered from wound care issues and had been in physical therapy for six months.  He was taking several medications.

[2] Ms. Sandow testified during her deposition that it was Mrs. Laroe that helped Mr. Laroe from his wheelchair.  Because in the context of a summary judgment motion the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party, we will assume that it was Ms. Sandow rather than Mrs. Laroe that helped Mr. Laroe from his wheelchair.

opinion. Of relevance to this appeal, the trial court concluded (1) that Appellant had failed to show a causal link between the accident and injury because she had not presented expert testimony showing such a link and (2) that Appellant had failed to establish that Appellees were liable under the motor vehicle exception to governmental immunity.

On appeal, Mrs. Laroe raises two issues:

1. Whether the trial court abused its discretion and committed an error of law by granting summary judgment and concluding that her claims are not excepted from governmental immunity under the motor vehicle exception; and

2. Whether the trial court abused its discretion and committed an error of law in concluding that expert testimony was required to establish a causal link between the fall at issue and the injury.

(Appellant's Br. at 5.)

Appellant focuses her arguments with respect to the first issue on whether a vehicle needs to be in motion for the motor vehicle exception to apply. Appellant argues that Ms. Sandow had a duty to get Mr. Laroe onto the bus safely and that that duty falls within the "continuum of activity" of operating a motor vehicle; Appellant further argues that Ms. Sandow's decision of where to park (i.e., on the street rather than in the driveway) also falls within the continuum of activity. (Appellant's Br. at 16.)  However, we do not believe that this adequately addresses the conclusion of the trial court, which was that "Mr. Laroe's fall was not caused by the bus, moving or not, whatsoever." (Trial Ct. Op. at 5.)  As discussed below, such a causal relationship between operation of the bus and the injury suffered was necessary to meet the requirements of the motor vehicle exception.

3

Generally, Section 8541 of the Judicial Code (this and subsequent sections are referred to as the Tort Claims Act) codified the doctrine of governmental immunity, shielding local agencies from liability for damages from injuries upon another person caused by such agencies and their employees. 42 Pa.C.S. § 8541. Section 8542 of the Tort Claims Act provides an exception in relevant part as follows:

> (a) Liability imposed.—A local agency shall be liable for damages on account of an injury to a person . . . if *both* of the following conditions are satisfied and *the injury occurs as a result of one of the acts* set forth in subsection (b):
>
>> (1) The damages *would be recoverable under common law or a statute creating a cause of action* if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) . . . ; and
>>
>> (2) The injury *was caused by the negligent acts* of the local agency or an employee thereof acting within the scope of his office or duties *with respect to one of the categories listed in subsection (b)* . . . .
>
> (b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
>> (1) Vehicle liability.--The *operation of any motor vehicle* in the possession or control of the local agency . . . .

42 Pa.C.S. § 8542(a), (b)(1) (emphasis added). As Appellant points out, in *Balentine v. Chester Water Authority*, 191 A.3d 799 (Pa. 2018), our Supreme Court overruled longstanding precedent that to "operate" a vehicle "means to actually put [it] in motion," *Love v. City of Philadelphia*, 543 A.2d 531, 533 (1988) (overruled by

4

*Balentine*).  In *Balentine*, the Supreme Court adopted the definition of "operate" endorsed by Justice Newman in her dissent in *Warrick v. Pro Cor Ambulance, Inc.*, 739 A.2d 127 (Pa. 1999):

> The process of operating a vehicle encompasses more than simply moving the vehicle. When a person "operates" a vehicle, he makes a series of decisions and actions, taken together, which transport the individual from one place to another. The decisions of where and whether to park, where and whether to turn, whether to engage brake lights, whether to use appropriate signals, whether to turn lights on or off, and the like, are all part of the "operation" of a vehicle.
>
> . . . .
>
> The term "operation" reflects a continuum of activity, the boundaries of which this Court should define. "Operation" does not mean simply moving forward or backwards, but instead includes the decision[-]making process that is attendant to moving the vehicle.

*Balentine*, 191 A.3d at 810 [quoting *Warrick*, 739 A.3d at 128-29 (Newman, J., dissenting)].

However, neither the Supreme Court majority in *Balentine* nor Justice Newman in her dissent in *Warrick* dispensed with the statutory requirement that for liability to attach to a local government agency, the plaintiff must establish that "[t]he injury was *caused by the negligent acts* of the local agency or an employee thereof acting *within the scope of his office or duties with respect to one of the categories listed in subsection (b),*" 42 Pa.C.S. § 8542(a)(2) (emphasis added), which includes the motor vehicle exception.  To the contrary, *Balentine*, which reversed our affirmance of a grant of summary judgment, endorsed an approach that required such causation to be shown:

5

> Under the Tort Claims Act, before a court may address the underlying merits of an action against the government, the plaintiff must first state a claim upon which relief may be granted by pleading facts alleging: (1) that the government would have been liable under common law or statute for the injury; (2) that the injury was caused by the negligent act of the government or its agent acting within the scope of his duties; and (3) that the negligent act falls within one of the exceptions to immunity enumerated in subsection 8542(b) of the Judicial Code, 42 Pa.C.S. § 8542(b).

*Balentine*, 191 A.3d at 809.

Given the record before us, we agree with the trial court that there was no basis to find the causal nexus required to qualify for recovery under the motor vehicle exception. This is not a case where some act or omission of an agency with respect to any function of a motor vehicle resulted in harm; it is one where Mr. Laroe fell on his own property standing away from a still bus. *Compare with Balentine* (stationary water authority vehicle parked in roadway hit by another vehicle, resulting in water authority vehicle striking and killing person), *Warrick* (transit agency bus discharging students at wrong stop on street and blocking passengers' view of oncoming traffic resulted in death of student), and *Podejko v. Dep't of Transp.*, 236 A.3d 1216 (Pa. Cmwlth. 2020) (*en banc*) (fire department pumper truck flooded property). Simply put, there is nothing to show that Ms. Sandow's "negligent acts . . . acting *within the scope of [her] . . . duties with respect to . . . operation of [a] motor vehicle*"[3] caused Mr. Laroe to fall.

The only allegation of negligence is that Ms. Sandow parked in the street rather than in the Laroes' driveway, which would require Mr. Laroe to "cross

---

[3] 42 Pa.C.S. § 8542(a)(2).

6

a snow[-]and[-]ice[-]covered area to get to the bus." (Appellant's Br. at 8.)[4] This, Appellant urges, means that Ms. Sandow's decision about where to park resulted in the fall. However, there is no evidence that Mr. Laroe slipped and fell on snow and/or ice, let alone evidence that Ms. Sandow's decision regarding where to park caused Mr. Laroe to fall. If, indeed, there was any negligence on the part of Ms. Sandow, it might have been in leaving Mr. Laroe alone while she put the wheelchair in the bus rather than helping him to the bus first, but even this theory is questionable in the absence of any evidence, expert or otherwise, that he could not safely be left standing alone for a brief period. Moreover, no one saw the fall or was able to testify how it occurred. At all events, any such negligence would have nothing whatsoever to do with the bus or where it was parked.

With regard to Appellant's second issue, as she cannot establish a causal relationship between operation of the bus and Mr. Laroe's fall, we do not believe it is of any moment that expert testimony was not submitted to show a causal connection between the fall and injury.

In light of the foregoing, we affirm the order of the trial court.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[4] Furthermore, if there had been any evidence that Mr. Laroe slipped on snow or ice, such a condition would, as Appellees suggest, fall within the ambit of premises liability, with the fall occurring on property not owned or controlled by the local agency.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Rosemary Laroe, Individually and      :
as Administratrix of the Estate of      :
John F. Laroe,      :
                 Appellant      :
     :
           v.      :    No. 906 C.D. 2021
     :
Kathleen Sandow and Endless      :
Mountains Transportation Authority      :
d/b/a Best Transit      :

# O R D E R

AND NOW, this 18th day of July, 2022, the order of the Court of Common Pleas for the 44th Judicial District, Sullivan County Branch, Civil Division, is AFFIRMED.

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita